**IN THE UNITED STATE DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| **NATHAN WRIGHT, et al.** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:19-cv-00398-RLW** |
| | ) | |
| **FAMILY SUPPORT DIVISION of the** | ) | |
| **Missouri Department of Social Services,** | ) | |
| **et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

**<u>Title</u>**

TABLE OF CONTENTS ............................................................................................... ii

TABLE OF AUTHORITIES ....................................................................................... iv

   I.     Introduction ........................................................................................................1

   II.    Summary of Federal and Missouri Child Support Law ...............................2

   III.   Summary of Plaintiffs' Allegations ...............................................................4

   IV.   Standard of Review ..........................................................................................6

   V.    The District Court lacks subject matter jurisdiction to hear Plaintiffs' claims
       in their entirety under the *Rooker-Feldman* doctrine .......................................7

   VI.   This Court must abstain from hearing Plaintiffs' claims in their entirety under
       the *Younger* Abstention doctrine .....................................................................8

   VII.  Plaintiffs do not state a claim upon which relief can be granted against Defendant
       Parson in his official capacity as Governor of Missouri ...............................10

   VIII.  Plaintiffs fail to state a claim for violation of either substantive due process
       or equal protection ...........................................................................................12

       A.  Plaintiffs fail to state a claim in Count I upon which relief can be granted
          for violation of the Due Process and Equal Protection Clauses under
          *Griffin v. Illinois* and *Bearden v. Georgia* ............................................12

       B.  Plaintiffs fail to state a claim in Count II upon which relief can be granted
          for an Equal Protection Clause violation under *San Antonio School*
          *District v. Rodriguez.* ...............................................................................15

       C.  Plaintiffs fail to state a claim in Count IV upon which relief can be granted
          for violation of the Equal Protection Clause under *James v. Strange* .....16

   IX.   Plaintiffs fail to state a claim in Count III upon which relief can be granted
       for violation of the Due Process Clause for a purported fundamental right
       to travel ...........................................................................................................18

X.      Plaintiffs fail to state a claim in Count V upon which relief can be granted
        for violation of the Due Process Clause concerning lack of
        Procedural due process ................................................................................................20

CONCLUSION..........................................................................................................................25

CERTIFICATE OF SERVICE ...................................................................................................25

# TABLE OF AUTHORTIES

**Cases**

*281 Care Committee v. Arneson,*
   638 F.3d 621 (8th Cir. 2011).............................................................................. 11

*Aaron v. Target Corp.,*
   357 F.3d 768 (8th Cir. 2004)................................................................................ 9

*Air Evac EMS, Inc. v. Texas Dep't of Ins.,*
   851 F.3d 507 (5th Cir. 2017).............................................................................. 11

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .............................................................................................. 6

*Attorney General of New York v. Soto-Lopez,*
   476 U.S. 898 (1986) ............................................................................................ 18

*Bearden v. Georgia,*
   461 U.S. 660 (1983) ...................................................................................... 4, 12

*Beavers v. Arkansas State Bd. of Dental Exam'r,*
   151 F.3d 838 (8th Cir. 1998)............................................................................... 9

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................................................. 6

*Bell v. Burson,*
   402 U.S. 535 (1971) ............................................................................................ 21

*Blessing v. Freeston,*
   520 U.S. 329 (1997) .............................................................................................. 2

*Board of Regents of State College v. Roth,*
   408 U.S. 564 (1972) ...................................................................... 13, 21, 24

*Burlison v. Rogers,*
   311 Fed. Appx. 207 (11th Cir. 2008) ............................................................ 22

*Calzone v. Hawley,*
   866 F.3d 866 (8th Cir. 2017).............................................................................. 11

*Carmack v. Carmack,*
   947 S.W.2d 842 (Mo. Ct. App. W.D. 1997) ............................................. 3, 15

*Church v. Missouri,*
   913 F.3d 736 (8th Cir. 2019)................................................... 10, 11, 12

*City of Houston v. FAA,*
   679 F.2d 1184 (5th Cir.1982)........................................................................... 20

*Clark v. Jeter,*
   486 U.S. 456 (1988) .............................................................................................. 9

*Conley v. Gibson,*
   355 U.S. 41 (1957) ................................................................................................ 6

*Costner v. U.S.,*
   720 F.2d 539 (1983) ........................................................................................... 14

*District Attorney's Office for Third Judicial Dist. v. Osborne,*
   557 U.S. 52 (2009) ............................................................................................. 24

*District of Columbia Court of Appeals v. Feldman,*
   460 U.S. 462 (1983) .............................................................................................. 7

*Div. of Family Servs. v. Standridge*,
   676 S.W.2d 513 (Mo. banc 1984) .................................................................... 2

*Dixon v. Love*,
   431 U.S. 105 (1977) ...................................................................................... 21

*Dodson v. Univ. of Ark. For Med. Sciences*,
   601 F.3d 750 (8th Cir. 2010) ........................................................................... 7

*Dycus v. Cross*,
   869 S.W.2d 745 (Mo. 1994) ............................................................................ 1

*Edwards v. People of State of California*,
   314 U.S. 160 (1941) ...................................................................................... 19

*Flowers v. Flowers*,
   622 S.W.2d 414 (Mo. App. S.D. 1981) ............................................................. 1

*Fowler v. Benson*,
   924 F.3d 247 (6th Cir. 2019) ..................................................... 13, 17, 18, 20

*Fuller v. Oregon*,
   417 U.S. 40 (1974) .......................................................................... 16, 17, 18

*Griffin v. Illinois*,
   351 U.S. 12 (1956) .................................................................................. 4, 12

*Griffith v. Griffith*,
   190 S.W. 1021 (Mo. App. K.C. 1916) .............................................................. 2

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ........................................................................................ 6

*Hoblock v. Albany County Bd. of Elections*,
   422 F.3d 77 (2d Cir. 2005) ............................................................................. 7

*Hughes v. City of Cedar Rapids, Iowa*,
   840 F.3d 987 (8th Cir. 2016) .................................................................... 18, 19

*In re Kemp*,
   894 F.3d 900 (8th Cir. 2018) ......................................................................... 12

*James v. Strange*,
   407 U.S. 128 (1972) ..................................................................... 5, 14, 16, 17

*Johnson v. Bredesen*,
   624 F.3d 742 (6th Cir. 2010) ......................................................................... 16

*Jones v. Helms*,
   452 U.S. 412 (1983) ...................................................................................... 14

*Kadrams v. Dickinson Public Schools*,
   487 U.S. 450 (1988) ................................................................................ 15, 16

*King v. Finney*,
   2011 WL 4954001 (E.D. Mo. Oct. 18, 2011) .................................................... 8

*Kremer v. Chem. Constr. Corp.*,
   456 U.S. 461 (1982) ...................................................................................... 24

*Lajeunesse v. Missouri Dept. of Social Servs.*,
   350 S.W.3d 842 (Mo. App. W.D. 2011) ....................................................... 2, 3

*Lassiter v. Dept. of Social Services of Durham County, N.C.*,
   452 U.S. 18 (1981) ........................................................................................ 24

*League of United Latin American Citizens v. Bredesen*,
   500 F.3d 523 (6th Cir. 2007) ......................................................................... 18

*Lemonds v. St. Louis County*,
    222 F.3d 488 (8th Cir. 2000) ................................................................................. 7

*Los Angeles Cnty. Bar Ass'n v. Eu*,
    979 F.2d 697 (9th Cir. 1992) ............................................................................... 11

*M.L.B. v. S.L.J.*,
    519 U.S. 102 (1996) ...................................................................................... 13, 14

*Mackey v. Montrym*,
    443 U.S. 1 (1979) ............................................................................................... 13

*Marks v. Marks*,
    203 SW.3d 729 (Mo. Ct. App. E.D. 2006) ........................................................... 3

*Mattes v. ABC Plastics, Inc.*,
    323 F.3d 695 (8th Cir. 2003) ............................................................................... 6

*Matthews v. Eldridge*,
    424 U.S. 319 (1976) ........................................................................................... 21

*McKinzey v. Missouri Div. of Child Support,*
    *Enf't*, 2009 WL 982016 n. 4 (W.D. Mo. Apr. 13, 2009) ....................................... 7

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*,
    457 U.S. 423 (1982) ............................................................................................. 9

*Miller v. Reed*,
    176 F.3d 1202 (9th Cir. 1999) ...................................................................... 19, 20

*Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc.*,
    466 F.2d 552 (9th Cir.1972) ............................................................................... 20

*Moore v. Sims*,
    442 U.S. 415 (1979) ............................................................................................. 9

*Morgan v. Rabun*,
    128 F.3d 694 (8th Cir. 1997) ............................................................................. 20

*MSM Farms, Inc. v. Spire*,
    927 F.2d 330 (8th Cir. 1991) ............................................................................... 6

*Oglala Sioux Tribe v. Fleming*,
    904 F.3d 603 (8th Cir. 2018) ............................................................................... 9

*Ohio Civil Rights Com'n v. Dayton Christian Sch., Inc.*,
    477 U.S. 619 (1986) ............................................................................................. 9

 *Ortwein v. Schwab*,
    410 U.S. 656 (1973) .......................................................................................... 16

*Penzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987) ............................................................................................... 10

*Proctor v. Title 4-D*,
    318 F.Supp.3d 337 (D.C.D.C. 2018) ................................................................... 9

*Romer v. Evans*,
    517 U.S. 620 (1996) ........................................................................................... 20

*Ronwin v. Dunham*,
    818 F.2d 675 (8th Cir. 1987) ............................................................................. 10

*Saenz v. Roe*,
    526 U.S. 489 (1999) ........................................................................................... 19

*San Antonio Independent School District v. Rodriguez*,
    411 U.S. 1 (1973) ..................................................................................... 4, 14, 15

*Schaaf v. Residential Funding Corp.,*
   517 F.3d 544 (8th Cir. 2008) ............................................................................ 6
*Shell Oil Co. v. Noel,*
   608 F.2d 208 (1st Cir. 1979) ............................................................................ 11
*Shipley v. Interstate Collections Unit,*
   2011 WL 6256967 (W.D. Mo. Dec. 14, 2011) ................................................ 10
*State ex rel. Sikes v. Williams,*
   121 S.W. 64 (Mo. banc 1909) .......................................................................... 12
*Thompson v. Ellenbecker,*
   935 F.Supp. 1037 (D.S.D. 1995) ...................................................................... 6
*Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.,*
   770 F.2d 1228 (4th Cir. 1985) .......................................................................... 21
*U.S. v. Kras,*
   409 U.S. 434 (1973) .......................................................................................... 16
*Washington v. Harper,*
   494 U.S. 210 (1990) .......................................................................................... 21
*Weiss v. Weiss,*
   392 F.3d 306 (8th Cir. 2004) ...................................................................... 21, 22
*Woolridge v. Woolridge,*
   915 S.W.2d 372 (Mo. Ct. App. W.D. 1996) .................................................... 3
*Younger v. Harris,*
   401 U.S. 37 (1971) ............................................................................................ 8

**Statutes**

42 U.S.C. § 666 .................................................................................................... 2
MO. REV. STAT. § 454.1003 ................................................................... 1, 2, 11, 22
MO. REV. STAT. § 454.1005 ..................................................................... 2, 3, 22, 23
MO. REV. STAT. § 454.1010.3 .............................................................................. 23
MO. REV. STAT. § 454.1530 .................................................................................. 9
MO. REV. STAT. § 454.400.2(13) ..................................................................... 4, 15
MO. REV. STAT. § 454.501 .................................................................................... 4
MO. REV. STAT. §§ 452.340.1, 452.370.1 ........................................... 1, 3, 15, 23
MO. REV. STAT. §§ 452.370, 454.496, 454.500 ............................................ 4, 23
MO. REV. STAT. §§ 454.500, 454.501 ................................................................. 4
MO. REV. STAT. § 454.370.6 ................................................................................. 9

**Rules**

Mo. R. Civ. P. 88.01 ............................................................................................ 3

**Other Authorities**

Fed. Practice and Procedure § 4469.1, at 97, 101 (2d ed. 2002) ....................... 7

COME NOW Defendants, by and through counsel, and hereby submit their Memorandum in Support of their Motion to Dismiss Plaintiffs Nathan Wright, Camese Bedford, Ashley Gildehaus, and Lisa Mancini's (collectively, "Plaintiffs") Amended Complaint (the "Amended Complaint").

## I.    Introduction

Plaintiffs are noncustodial parents who have failed to financially support their children, as legally required. *See, e.g., Flowers v. Flowers*, 622 S.W.2d 414, 415 (Mo. App. S.D. 1981). Child support ensures that a parent contributes to the care and wellbeing of their child. Child support is not a fine, fee, or penalty imposed on an obligor. Child support obligations are calculated by accounting for the needs of obligor's child and the resources of that child's parents. The State of Missouri has a substantial interest in making sure families are supported and, therefore, Missouri's Family Support Division ("FSD") uses a number of tools to work with child support obligors so that financial support gets to those children. The last tool used before a nonpaying obligor is referred to the prosecutor for criminal nonpayment, is sending notice that continued child support nonpayment could suspend the obligor's driver's license and, if that obligor continues nonpayment, eventually suspending that driver's license. *See* Mo. Rev. Stat. § 454.1003. Plaintiffs argue that suspending driver's licenses for child support nonpayment is unconstitutional on the sole basis that an obligor cannot argue that he is unable to pay due to indigence at the final pre-suspension hearing. Plaintiffs ignore that, under Missouri law, child support obligations in the first instance are determined by looking at both parents' ability to financially support their child and that child support obligors can seek modification of the payment amount when a circumstance change occurs. Mo. Rev. Stat. §§ 452.340.1, 452.370.1. As such, Plaintiffs fail to establish any constitutional violations. A parent "has no fundamental right to avoid [the] duty" to support their child. *Dycus v. Cross,* 869 S.W.2d 745, 750 (Mo. 1994). Despite this, Plaintiffs ask this Court to

1

interfere with FSD's ability to seek the court-imposed obligation to pay support due to their child solely because they cannot again argue ability-to-pay at the final pre-suspension hearing.

## II.     Summary of Federal and Missouri Child Support Law

Parents have a common law duty to support their children. *See, e.g., State ex re. Div. of Family Servs. v. Standridge*, 676 S.W.2d 513, 515 (Mo. banc 1984); *Griffith v. Griffith*, 190 S.W. 1021, 1022 (Mo. App. K.C. 1916). The duty to support one's children is codified in federal guidelines for state family programs funding and by child support laws in every state. *Blessing v. Freeston,* 520 U.S. 329, 333-335 (1997). The federal guidelines dictate reasonable tools for states to enforce and collect child support obligations, including authority to withhold or suspend driver's licenses. 42 U.S.C. § 666.

Missouri has codified its own child support laws and regulations to comply with these federal guidelines. *Lajeunesse v. Missouri Dept. of Social Servs.*, 350 S.W.3d 842, 846 (Mo. App. W.D. 2011). If a child support obligor fails to make child support payments such that the obligor owes $2,500.00, or three months of payments, whichever is less, the obligor may face driver's license suspension. MO. REV. STAT. § 454.1003. If the obligor fails to request child support payment modification or to enter into a payment plan, the obligor may still request a hearing "[t]o show cause why suspension of a license may not be appropriate". MO. REV. STAT. § 454.1005. At *this hearing*, the judge or an administrative hearing officer is restricted to determining only:

    (1) The identity of the obligor;

    (2) Whether the arrearage is in an amount greater than or equal to three months of support payments or two thousand five hundred dollars, whichever is less, by the date of service of a notice of intent to suspend; and

    (3) Whether the obligor has entered a payment plan. If the action involves a failure to comply with a subpoena or order, the only issues that may be determined are the identity of the obligor and whether the obligor has complied with the subpoena or order.

MO. REV. STAT. § 454.1005.4. Plaintiffs' sole contentions relate to this final step prior to an obligor's driver's license suspension. Plaintiffs argue that because an obligor cannot raise ability to pay at *this hearing*, their equal protection rights, fundamental right to travel, and due process rights are violated. *See* the Amended Complaint ("Am. Compl."), ¶ 236.

However, ability to pay is considered in setting and enforcing child support from the beginning. MO. REV. STAT. § 452.340. Missouri law lists "the financial resources and needs of the parents," as the second factor to be considered in setting the amount of child support for a child. Notably, the first consideration is listed as "the financial needs and resources of the child." *Id.* The courts and FSD determine the right amount of child support to be ordered using a two-step process. *Marks v. Marks*, 203 SW.3d 729, 734 (Mo. Ct. App. E.D. 2006), *citing Woolridge v. Woolridge*, 915 S.W.2d 372, 379 (Mo. Ct. App. W.D. 1996). First, the adjudicator must determine the presumed child support amount using Form 14, a formula adopted by the Supreme Court of Missouri for child support determination. Form 14 requires that the monthly gross income of both the support receiving and support paying parents be calculated and considered *before* a child support amount is awarded. *Carmack v. Carmack*, 947 S.W.2d 842, 845 (Mo. Ct. App. W.D. 1997). Second, the adjudicator must determine whether the presumed child support amount, as calculated by the Form 14, is just and appropriate. Mo. R. Civ. P. 88.01; *Marks*, 203 SW.3d at 734. If the adjudicator deems that the presumed child support amount inappropriate, it may order the non-custodial parent to pay a higher or lower amount than the Form 14 calculation, or even zero child support. *Marks,* 203 S.W.3d at 734. When an adjudicator orders a support amount outside the presumed amount, the child support order **must** address the relevant factors listed in Missouri Revised Statute section 452.340, including financial needs and resources of the parents. Cmt. G, Missouri Form 14.

Because child support orders are ongoing and family circumstances change, both child support judgments entered by a court as well as FSD administrative orders are subject to modification. *See* MO. REV. STAT. §§ 452.370, 454.496, 454.500. To change the child support amount due when it was established under an FSD administrative child support order, a parent may request either that the child support order be reviewed by FSD or that a court enter its own child support order. MO. REV. STAT. §§ 454.500, 454.501. When a court obtains jurisdiction to establish a child support order, its order supersedes the prior administrative child support order. MO. REV. STAT. § 454.501.

The general standard for child support order modification is whether the parent shows a change in circumstances so substantial and continuing as to make the previous child support order unreasonable. MO. REV. STAT. §§ 452.370, 454.500.3. A twenty percent change in the presumed child support amount is a prima facie showing of a substantial and continuing change in circumstances. MO. REV. STAT. § 452.370. A parent can request FSD review their child support order, whether entered by a court or by FSD, for modification once every three years. MO. REV. STAT. § 454.400.2(13). FSD may review a child support order earlier within that three-year period in specific circumstances, such as when a parent experiences a more than 50% increase or decrease in income. 13 C.S.R. 30-5.020. If a parent asks a court to change its judicial child support order *pro se*, the Missouri Supreme Court has adopted specific forms for self-represented litigants to ask a court to modify child support orders; these fill-in-the-blank forms free of charge, with instructions and information. *See* https://www.courts.mo.gov/page.jsp?id=638.

### III.     Summary of Plaintiffs' Allegations

Plaintiffs allege that Missouri's system for suspending driver's license for failure to pay child support violates (1) equal protection and fundamental fairness under *Griffin v. Illinois*, 351 U.S. 12 (1956) and *Bearden v. Georgia*, 461 U.S. 660 (1983); (2) equal protection under *San*

*Antonio Independent School District v. Rodriguez*, 411 U.S. 1 (1973); (3) the fundamental right to travel; (4) equal protection under *James v. Strange*, 407 U.S. 128 (1972); and (5) procedural due process.

Plaintiffs owe more than $2,500.00 in child support and who have, as a result, had their driver's licenses suspended. *See* Am. Compl., ¶¶15-18. Plaintiffs also allege that they are indigent and unable to pay the amounts due. *Id.* However, Plaintiffs admit that they have been able to use procedures provided to modify their child support obligations. Plaintiff Wright admits that he was able to successfully apply for a modification that adjusted downward his child support obligation in 2006. *See Id.* ¶ 30. Plaintiff Bedford admits that his child support obligation was reduced in January 2019. *Id.* ¶ 50. Plaintiff Gildehaus admits that he originally was ordered to pay $306/month in child support, but he later agreed in mediation to pay an increased amount. *See Id.* ¶¶ 66, 68, 70. Plaintiff Gildehaus also admits that he received five stays on his driver's license suspension, presumably by entering into a payment plan with FSD or showing he was looking for work, and has requested a sixth stay. *Id.* ¶ 77. Plaintiffs fail to state why they have not contacted FSD to enter into a payment plan or opted to seek child support modification.

Plaintiffs admit that they presented their ability to pay information and that a child support obligation was imposed only *after* a hearing in front of the family court wherein their ability to pay *was considered*. *See* Am. Compl., ¶¶ 30, 50, 66, 70, 97-98. While Plaintiffs assert that they are still unable to pay the amounts ordered by the family court, the fact that they are unhappy with the outcome does not negate that they presented, and a court considered, ability to pay information. Further, Plaintiffs have many opportunities to raise their ability to pay and seek child support modifications, both before the court and before FSD.

#### IV.      Standards of Review

Because this case does not involve a suspect classification or fundamental right, the statute is presumed constitutional. *MSM Farms, Inc. v. Spire*, 927 F.2d 330, 332 (8th Cir. 1991). *See also Thompson v. Ellenbecker*, 935 F.Supp. 1037, 1040 (D.S.D. 1995) (burden is on plaintiffs to prove statute using drivers' license law to collect delinquent child support is unconstitutional). For the purposes of this Motion to Dismiss, the Court assumes as true Plaintiffs' allegations in their Amended Complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Dismissal is appropriate because, even assuming Plaintiffs' allegations are true, Plaintiffs cannot prove a set of facts entitling them to relief, and the Court lacks subject matter jurisdiction to grant relief.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to ' state a claim to relief that is plausible on its face. "' *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Plaintiffs "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.,* 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly,* 550 U.S. at 555 & n.3). This obligation requires plaintiffs to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555.

A motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is limited to a facial attack on the pleadings. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003). The applicable standard is the same as a motion to dismiss under Rule 12(b)(6) in that the Amended Complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." *Id.* (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

**V.     The District Court lacks subject matter jurisdiction to hear Plaintiffs' claims in their entirety under the *Rooker-Feldman* doctrine.**

Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. *See, e.g., McKinzey v. Missouri Div. of Child Support Enf't*, 2009 WL 982016, *3 n. 4 (W.D. Mo. Apr. 13, 2009) (dictum). This doctrine prohibits federal courts, other than the U.S. Supreme Court, from reviewing final state court judgments. *Lemonds v. St. Louis County*, 222 F.3d 488, 492 (8th Cir. 2000). The *Rooker-Feldman* doctrine bars "cases … brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Dodson v. Univ. of Ark. For Med. Sciences*, 601 F.3d 750, 754 (8th Cir. 2010) (*quoting* Fed. Practice and Procedure § 4469.1, at 97, 101 (2d ed. 2002)). Even claims "inextricably intertwined with state court judgments are outside the scope of federal district court jurisdiction." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).

Plaintiffs are not directly appealing a state court judgment, and their Amended Complaint studiously avoids mentioning state court action. However, Plaintiffs cannot avoid application of the *Rooker-Feldman* doctrine "simply by clever pleading – by alleging that actions taken pursuant to a court order violate [their] rights without ever challenging the order itself." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005). Named Plaintiffs' obligations to pay child support are pursuant to child support orders, issued and monitored by a Missouri court. *See Bedford v. Bedford*, Case No. 16SL-DR02769-01 (filed June 6, 2018); *Wright v. Wright*, Case No. 2105FC-11848-01 (filed Mar. 28. 2011); *Gildehaus v. Gildehaus*, Case No.10AB-DR00600 (filed Nov. 9, 2010); *Grote v. Grote*, Case No. 2102FC-04413 (filed May 9, 2001). In these cases, following the statutes, a State Circuit Court examined Plaintiffs' ability to pay child support, including their indigence claims, and determined the child support amount each Plaintiff was required to pay.

7

Plaintiffs' affidavits, attached to the Amended Complaint, contain a litany of complaints about the Courts and Judges. For example, Plaintiff Wright complains that the Court ordered him to pay $900 in monthly support for his daughter, later reduced to $509/month, but the process was "expensive, slow, and discouraging." *See* Doc. 22-1, ¶ 3. Plaintiff Bedford complains that the Court ordered him to pay child support, but admits that he chose not to attend his hearing. *See* Doc. 22-3, ¶ 5. He also admits that he ended up back in Court, with a public defender, after he was charged with criminal non-support, and complains that the Court charged more fees. *Id.* ¶ 9. Similarly, Plaintiff Gildehaus complains of his Court ordered child support and then complains about the Court entering the child support amount that he admits he agreed to pay in his mediation agreement. *See* Doc. 22-5, ¶¶ 4, 5, 8. Plaintiff Mancini alleges the Court mistreated her when it ordered her to pay child support and the Judge mistreated her by allegedly "refus[ing] to allow [her] to explain the circumstances." *See* Doc. 22-7, ¶ 10.

Each Plaintiff admits that their child support obligation was Court ordered. Plaintiffs now take issue with their driver's licenses being suspended for their failure to pay that child support. Driver's license suspension is a consequence of their failure to comply with a state court judgment. This suit is a *de facto* attack on the state court judgment and, therefore, this Court lacks subject matter jurisdiction to hear Plaintiffs' claims under the *Rooker-Feldman* doctrine.

**VI.     This Court must abstain from hearing Plaintiffs' claims in their entirety under the *Younger* Abstention doctrine.**

Because Plaintiffs' challenge on-going state child support proceedings, their claims should be dismissed under the *Younger* abstention doctrine. *King v. Finney*, 2011 WL 4954001, *11 (E.D. Mo. Oct. 18, 2011). Under the doctrine the Supreme Court outlined in *Younger v. Harris*, 401 U.S. 37, 43-45 (1971), a district court should abstain from hearing a matter when there is "(1) the existence of an ongoing state judicial proceeding, (2) which implicates important state interests,

and (3) which provides an adequate opportunity to raise constitutional challenges." *Aaron v. Target Corp.*, 357 F.3d 768, 774 (8th Cir. 2004) (*citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). This doctrine "reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiff." *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 610 (8th Cir. 2018) (*quoting Moore v. Sims*, 442 U.S. 415, 423 (1979)). *Younger* abstention "does not arise from lack of jurisdiction in the District Court, but from strong policies counseling against the exercise of such jurisdiction where particular kinds of state proceedings have already been commenced." *Ohio Civil Rights Com'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 626 (1986).

The first *Younger* abstention factor is satisfied because there are on-going state judicial proceedings. The named Plaintiffs are all subject to an ongoing child support order, issued and monitored by the Circuit Court of St. Louis County, Missouri. *See Bedford v. Bedford*, Case No. 16SL-DR02769-01 (filed June 6, 2018); *Wright v. Wright*, Case No. 2105FC-11848-01 (filed Mar. 28. 2011); *Gildehaus v. Gildehaus*, Case No.10AB-DR00600 (filed Nov. 9, 2010); *Grote v. Grote*, Case No. 2102FC-04413 (filed May 9, 2001). Under state law, the court has continuing jurisdiction to enforce the child support order. MO. REV. STAT. § 454.1530. Their cases are open and will not terminate until the child support order is fully discharged. MO. REV. STAT.§ 454.370.6. *See also Proctor v. Title 4-D*, 318 F.Supp.3d 337, 346 (D.C.D.C. 2018).

The second *Younger* abstention factor is also satisfied because states have a recognized interest in ordering and enforcing child support obligations. *Clark v. Jeter*, 486 U.S. 456, 462 (1988). *Younger* abstention allows this Court to abstain from a case "in order to preserve traditional principles of equity, comity and federalism." *Beavers v. Arkansas State Bd. of Dental Exam'r*, 151 F.3d 838, 840 (8th Cir. 1998).

Third, Plaintiffs have not, and cannot, argue that they could not have raised their constitutional claims in the state courts. Plaintiffs had, and continue to have, the opportunity to raise any constitutional claims in front of the State Circuit Court. *Shipley v. Interstate Collections Unit*, 2011 WL 6256967, *3 (W.D. Mo. Dec. 14, 2011). Plaintiffs can always seek state court review of their child support obligation, including review of any argument that a hardship has impeded their ability to pay or any stay of their driver's licenses for failure to meet that obligation, and can raise any constitutional claims there. *Ronwin v. Dunham*, 818 F.2d 675, 678 (8th Cir. 1987) (providing that *Younger* abstention was "fully applicable" to state administrative proceedings regarding the suspension of appellant's driver's license).

In addition, Plaintiffs' constitutional challenges to state statutes and state agency policies militate in favor of abstention. Supreme Court precedent provides "that federal courts should avoid unwarranted determination of federal constitutional questions." *Ronwin*, 818 F.2d at 678 (*citing Penzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 11-12 (1987)). Plaintiffs had a full and fair opportunity to raise any constitutional concerns they had to the amount of their child support obligation and their ability to pay in their state court proceedings. That is all due process requires.

## VII.   Plaintiffs do not state a claim upon which relief can be granted against Defendant Parson in his official capacity as Governor of Missouri.

Because the State is entitled to sovereign immunity from all suits in law or equity, subject to certain exceptions not present here, the Plaintiffs name various state officials as party-defendants under the *Ex parte Young* doctrine in their Amended Complaint. *See Church v. Missouri,* 913 F.3d 736, 745-47 (8th Cir. 2019) (State does not waive sovereign immunity for prospective injunctive relief, leaving only the avenue of *Ex parte Young* doctrine); *see* Am. Compl., ¶¶ 20-24. Plaintiffs assert that the Governor is a proper defendant because he is the "head of the executive branch of the Missouri state government and is responsible for enforcing state

law," including the state law authorizing FSD to suspend driver's licenses for parents failing to pay child support. *See* Am. Compl., ¶ 20. Plaintiffs also assert the Governor is a proper defendant because he oversees Missouri's executive departments, including the Department of Social Services and the Department of Revenue. *Id.*

To determine whether the *Ex parte Young* doctrine permits suit against a particular state official, a court conducts a "straightforward inquiry into whether the complaint alleges (1) an ongoing violation of federal law and (2) seeks relief properly characterized as prospective." *Church,* 913 F.3d at 747 (*quoting 281 Care Committee v. Arneson,* 638 F.3d 621, 632 (8th Cir. 2011)). The first element is determinative here, because a state official must have "some connection to the enforcement of the challenged laws." *Church,* 913 F.3d at 748 (*quoting Calzone v. Hawley,* 866 F.3d 866, 869 (8th Cir. 2017)). The connection does not need to be primary authority nor does the state official need to have the "full power to redress a plaintiff's injury." *Church,* 913 F.3d at 748 (*quoting 281 Care,* 638 F.3d at 632-33). Plaintiffs argue the Governor's responsibility for enforcing state law and role as head of the executive branch constitute the "connection" necessary under *Ex parte Young. See* Am. Compl., ¶ 20.

However, the Governor's general authority for enforcing the law is only an adequate "connection" if that authority provides the Governor enforcement abilities. *Church,* 913 F.3d at 749. A broad duty to uphold and enforce state law is not sufficient to make a governor a party-defendant. *Id.; accord Air Evac EMS, Inc. v. Texas Dep't of Ins.*, 851 F.3d 507, 517 (5th Cir. 2017); *Los Angeles Cnty. Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir. 1992); *Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir. 1979). The Governor possesses no direct enforcement powers regarding driver's licenses suspension under Missouri Revised Statute section 454.1003.1. Nor does the Governor's role as head of the executive branch or his related appointment power for

directors of various state agencies, constitute a "connection" under *Ex parte Young. See Church,* 913 F.3d at 750. Appointing state officials is an insufficient administrative act. *Id.* (*citing State ex rel. Sikes v. Williams,* 121 S.W. 64, 65 (Mo. banc. 1909)) (confirmations by Missouri Senate of Governor's appointments are administrative not legislative acts). For these reasons, sovereign immunity prohibits Plaintiffs' claims against the Governor, and they should be dismissed.

**VIII.  Plaintiffs fail to state a claim for violation of either substantive due process or equal protection.**

Plaintiffs allege three counts involving the Equal Protection Clause. In order to state a prima facie case for violation of the Equal Protection Clause, Plaintiffs must demonstrate that they have been treated differently from others with whom they are similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018). Plaintiffs argue that they have been treated differently than wealthy people. As demonstrated below, under each of Plaintiffs' arguments, the Missouri law suspending driver's licenses for failure to pay child support is subject to rational basis review and, because suspension of driver's licenses bears a rational relationship to the legitimate state interest in collecting child support, the law survives scrutiny.

**A.  Plaintiffs fail to state a claim in Count I upon which relief can be granted for violation of the Due Process and Equal Protection Clauses under *Griffin v. Illinois* and *Bearden v. Georgia*.**

At Count I, Plaintiffs allege violations of both the Fourteenth Amendment's Due Process Clause (substantive due process) and the Equal Protection Clause, claiming that the Missouri statute discriminates on the basis of wealth in a "fundamentally unfair" way against indigent parents who are unable to pay their child support obligations. *See* Am. Compl., ¶¶ 188, 257-261. Plaintiffs' argument relies solely on a line of Supreme Court cases involving protection of a liberty interest. *Bearden v. Georgia*, 461 U.S. 660 (1983); *Griffin v. Illinois*, 351 U.S. 12 (1956). The

analysis the *Griffin* line of cases is inapposite to the nature of the statute and interests here, and Plaintiffs fail to state a claim upon which relief can be granted under the Due Process Clause and Equal Protection Clause relating to "fundamental fairness."

A person's interest in their driver's license is, at best, a property interest, not a liberty interest that is subject to much greater protection. *See Mackey v. Montrym*, 443 U.S. 1, 11 (1979) (driver's license is a protectable property interest); *M.L.B. v. S.L.J.*, 519 U.S. 102, 124 (1996) (the only two exceptions to rational basis review under the *Griffin* line of cases are access to political processes as voters and criminal or quasi-criminal judicial processes). The Constitution does not create property interests, which are defined and limited by the existing rules and supporting law. *Board of Regents of State College v. Roth*, 408 U.S. 564, 577 (1972) (professor did not have protectable property interest in reemployment under contract terms; *Fowler v. Benson*, 924 F.3d 247, 256-57 (6th Cir. 2019) (property interest in state-issued driver's license does not create specific interest to be exempt from paying debt). Plaintiffs do not hold an unqualified property right in their driver's licenses, rather this right is defined and limited by the pre-existing Missouri law requiring payment of child support obligations to avoid possible suspension. *See Fowler,* 924 F.3d at 256-57.

To demonstrate that Missouri's statute violates substantive due process concerning a property interest, Plaintiffs must show that suspension under the statute is a "truly irrational action" because the "theory of substantive due process … is properly reserved for truly egregious and extraordinary cases" and those "offensive to human dignity." *Azam v. City of Columbia Hts.,* 865 F.3d 980, 986 (8th Cir. 2017) (government fees and enforcement of municipal code did not violate property rights of landowner under substantive due process). Because wealth is not a suspect class, Plaintiffs' challenge under the Equal Protection Clause is subject to rational basis review.

13

*Rodriguez,* 411 U.S. at 29 ("Wealth discrimination alone does not provide an adequate basis for invoking strict scrutiny."); *M.L.B.,* 519 U.S. at 123-24 (the general rule is review for rationality of statute). Therefore, whether reviewed for "fundamental fairness" under *Griffin* and *Bearden* through *M.L.B.*, under substantive due process or under equal protection, rational basis review applies. *Rodriguez,* 411 U.S. at 29 ("Wealth discrimination alone does not provide an adequate basis for invoking strict scrutiny.").

A law passes the rational basis test if it is rationally related to a legitimate state purpose. *See, e.g., Costner v. U.S.*, 720 F.2d 539, 541 (1983). Missouri has a legitimate state purpose in collecting child support from parents on behalf of their children. *See Jones v. Helms,* 452 U.S. 412, 423 (1983) ("There can be no question about the legitimacy of the purpose to cause parents to support their children."). Suspension of an obligor's driver's license for failure to pay child support is rationally related to this legitimate state purpose because it is designed to aid in collection of child support. Plaintiffs argue that suspension of driver's licenses is irrational because it makes it harder for an obligor to obtain and hold a job, thereby making it harder to pay child support. However, even if that were true, it is irrelevant to the question of whether the program is unconstitutional. *James v. Strange*, 407 U.S. 128, 133-34 (1972) ("Misguided laws may nonetheless be constitutional…. Our task, however, is not to weigh this statute's effectiveness but its constitutionality."). As such, suspension of driver's licenses for failure to pay child support passes the rational basis test and Plaintiffs are unlikely to succeed on the merits of their claim in Count I.

**B. Plaintiffs fail to state a claim in Count II upon which relief can be granted for an Equal Protection Clause violation under *San Antonio School District v. Rodriguez.***

In Count II, Plaintiffs allege violation of the Equal Protection Clause on the grounds that the Missouri statute discriminates on the basis of wealth against indigent parents who are unable to pay their child support obligations. *See* Am. Compl., ¶¶ 201-206, 262-269. Wealth or poverty is not a protected class, and therefore challenges under the Equal Protection Clause for distinctions made on the basis of wealth are subject to rational basis review and not to any form of heightened scrutiny. *Rodriguez,* 411 U.S. at 1288 (upholding state educational funding system with unequal-funded school districts under an Equal Protection Clause challenge because it bore a rational relationship to a legitimate state purpose); *Kadrams v. Dickinson Public Schools,* 487 U.S. 450, 461-62 (1988) (statute allowing school districts to charge user fee for school bus transportation that disadvantaged poor students survives rational basis review under Equal Protection Clause).

First, child support obligations are calculated either by the courts or FSD by a formula that incorporates an obligor's ability to pay as well as the child's needs. *See* MO. REV. STAT. § 452.340; *Carmack v. Carmack,* 947 S.W.2d 842, 845 (Mo. Ct. App. W.D. 1997). Second, child support obligations are not comparable to traffic fines, court costs, or other government fees and fines, which are set by arbitrary scale and not according to a defendant's ability to pay; therefore, no "wealth-based discrimination" exists whereby a wealthy person is able to pay a fixed fine or cost that a poor person cannot. Third, child support obligors have the ability to request modification of their obligations, or show hardship to a court for relief from the suspension. MO. REV. STAT. § 454.400.2(13); 13 C.S.R. 40-106.010.

At stake in *Kadrams* was the ability of children to obtain an education because poor students were unable to pay the bus fee and had unreliable transportation from their impoverished

families. 487 U.S. at 454-55. Nevertheless, the Court found that the state "does not maintain a legal or practical monopoly on the means of transporting children to school" and that the state's decision to allow local school district to charge a user fee, as a method for encouraging consolidation among districts and conserve funding, was constitutionally permissible despite its impact on those in poverty. *Id.* at 462-63. Likewise, the Court in *Ortwein v. Schwab* denied an equal protection challenge by welfare recipients, a group who is by definition below the poverty line, to the filing fee for an appeal of denial or reduction in their benefits. 410 U.S. 656, 661 (1973) (applying rational basis review). The Court based its decision in part on its holding in *U.S. v. Kras*, where the Court upheld under the Equal Protection Clause the requirement of filing fees payment for filing a bankruptcy petition, which presented poverty issues and implications. 409 U.S. 434, 446 (1973).

As discussed above, suspension of driver's licenses for failure to pay child support passes the rational basis test and Plaintiffs have failed to state a claim for which relief can be granted in Count II.

### C.  Plaintiffs fail to state a claim in Count IV upon which relief can be granted for violation of the Equal Protection Clause under *James v. Strange*.

In Count IV, Plaintiffs allege violation of the Equal Protection Clause due to the use of unique, "unduly harsh," and discriminatory collection methods by Defendants relative to the terms and methods of collection methods available to private creditors. *See* Am. Compl. ¶¶ 218-220; *James v. Strange,* 407 U.S. 128 (1972); *see also Johnson v. Bredesen,* 624 F.3d 742 (6th Cir. 2010). Because Plaintiffs do not present a suspect class subject to strict or even heightened scrutiny, the basis for review is whether the statue is rationally related to a legitimate government interest. *Strange*, 407 U.S. at 140-41 (applying rational basis review to Kansas recoupment statute); *Fuller v. Oregon,* 417 U.S. 40, 49 (1974) (rational basis review of Oregon recoupment

16

statute); *Fowler v. Benson*, 924 F.3d 247, 263 (6th Cir. 2019) (holding challenge to driver's license suspensions under *Strange* subject to rational basis review).

The *Strange* Court found that a Kansas statute violated equal protection because it "eliminat[ed]… exemptions normally available to judgment debtors." *Fuller*, 417 U.S. at 47. The Court explained that the Equal Protection Clause was violated because there must be "some rationality" in discriminating between the two classes of debtors, and that Kansas had imposed "discriminatory conditions of repayment" not imposed on other judgment debtors without any such basis. *Strange*, 407 U.S. at 140.

The *Fuller* Court explained its decision in *Strange* by stating that therein the Court "found that the elimination of the exemptions normally available to judgment debtors embodied elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law." *Fuller*, 417 U.S. at 47. The Oregon statute did not eliminate any protections otherwise available at law for its state-obligated debtors, and for that reason passed the Court's rational basis review. *Id.* at 49-50.

The Missouri statute does not eliminate any protections for child support obligors that are otherwise available to ordinary judgment debtors, like was present in *Strange.* As the Court stated in *Strange*, "[w]e recognize, of course, that the State's claim to reimbursement may take precedence, under appropriate circumstances, over the claims of private creditors and that enforcement procedures with respect to judgments need not be identical." *Strange*, 407 U.S. at 138. *Strange* is also distinguishable from the facts in this case because the State is not seeking to reimburse its own coffers; rather, it seeks to collect support due to obligor's child. Further, the State is "uniquely empowered to grant, suspend, or reinstate driver's licenses" and the Supreme Court "does not require anything like exact parity between the State and private creditors in this

17

regard." *Fowler*, 924 F.3d at 263 ("It would be passing strange indeed to interpret *Strange* as putting Michigan to the choice of either giving up its right to suspend the licenses of those with unpaid court debt or empowering private creditors to suspend the driver's licenses of those indebted to them.").

In addition, laws challenged under *Strange* are subject to rational basis review. *Fuller*, 417 U.S. at 49-50.  As stated above, suspension of driver's licenses for failure to pay child support passes the rational basis test and Plaintiffs have failed to state a claim for which relief can be granted in Count IV.

### IX.    Plaintiffs fail to state a claim in Count III upon which relief can be granted for violation of the Due Process Clause for a purported fundamental right to travel.

A state law only implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification serving to penalize the exercise of the right to travel. *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986). Plaintiffs argue that the statute is an "actual barrier to intrastate movement." *See* Am. Compl., ¶ 210. They also argue that because the statute "implicates a fundamental liberty interest," it must be "narrowly tailored to achieve compelling state objectives." *Id.*, ¶ 215. This conclusion does not follow because Plaintiffs cannot establish that driver's license suspension burdens the fundamental right to travel and, therefore, the statute is only subject to rational basis scrutiny. *See, e.g., League of United Latin American Citizens v. Bredesen*, 500 F.3d 523, 530 (6th Cir. 2007).

The fundamental right to travel has three components: "1) the right of a citizen of one state to enter and leave another state, 2) the right to be a welcome visitor, not an unfriendly alien, when temporarily present in another state, and 3) for those travelers who become permanent residents, the right to be treated like other citizens of that state." *Hughes v. City of Cedar Rapids, Iowa*, 840

F.3d 987, 995 (8th Cir. 2016) (*citing Saenz v. Roe*, 526 U.S. 489, 500-01 (1999)). Plaintiffs have

not alleged and cannot establish that any of the three components have been impinged upon.

The first component protects a person's right to go from one state to another. *Hughes*, 840

F.3d at 995. A statute that does not burden entry into or exit from a state does not directly impair

the right to free interstate movement and, therefore, does not violate the fundamental right to travel.

*Saenz*, 526 U.S. at 500. The fundamental right to travel does not contemplate a fundamental right

to drive a motor vehicle. *Miller v. Reed*, 176 F.3d 1202, 1205-06 (9th Cir. 1999). A burden on a

single mode of transportation does not implicate the right to interstate travel. *Id.* Plaintiffs have

not argued and cannot establish that Missouri law permitting driver's license suspension for failure

to pay child support places any burden on the obligor's right to go from one state to another.

Similarly, Plaintiffs have not alleged and cannot establish either the second or third

components. The Missouri child support laws have no relationship to Plaintiffs' right to be a

"welcome visitor" in Missouri or any other state. Nor do the child support laws treat travelers who

become permanent residents different than other citizens of that state. Missouri law simply treats

Plaintiffs like any other person without a driver's license in the state of Missouri.

Indeed, Plaintiffs concede that there is no fundamental right to drive. *See* Am. Compl. at ¶

207. Further, they misplace their reliance in a 1941 Supreme Court concurring opinion for the

proposition that "[a]llowing states to limit the movement of those who are indigent 'would also

introduce a caste system utterly incompatible with the spirit of our system of government.'" *Id.*

(*quoting Edwards v. People of State of California*, 314 U.S. 160, 181 (1941) (Douglas, J.,

concurring)). The statute at issue in *Edwards* explicitly stated that it was a misdemeanor to bring

or assist in bringing an indigent non-resident into the state of California. *Edwards*, 314 U.S. at 166.

That statute is in no way analogous to a statute that suspends an obligor's driver's license for

failure to pay child support. A burden on a single mode of transportation does not implicate the right to interstate travel. *Miller*, 176 F.3d at 1205; *see Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc.,* 466 F.2d 552, 554 (9th Cir.1972) ("A rich man can choose to drive a limousine; a poor man may have to walk. The poor man's lack of choice in his mode of travel may be unfortunate, but it is not unconstitutional."); *City of Houston v. FAA,* 679 F.2d 1184, 1198 (5th Cir.1982) ("At most, [the air carrier plaintiffs'] argument reduces to the feeble claim that passengers have a constitutional right to the most convenient form of travel. That notion, as any experienced traveler can attest, finds no support whatsoever in [the Supreme Court's right of interstate travel jurisprudence] or in the airlines' own schedules.").

Because there is no fundamental right to drive, Plaintiffs' driver's licenses suspension did not unconstitutionally impede their right to interstate travel. As such, the appropriate level of scrutiny is rational basis scrutiny wherein the statute will be upheld so long as it bears a rational relation to some legitimate end. *See, e.g., Romer v. Evans*, 517 U.S. 620, 631 (1996). As discussed above, the statutory scheme that suspends a driver's license in order to incentivize child support payment bears a rational relation to the significant state interest of collecting child support. *See* Section IX, supra. *See also Fowler v. Benson*, 924 F.3d 247, 263 (6th Cir. 2019) (finding that Michigan's statutory scheme of suspending driver's licenses of people with unpaid court debt is rationally related to the legitimate government interest in "promoting compliance with court orders and in collecting traffic debt"). Therefore, this Court should dismiss Plaintiffs' claim that the policy of suspending driver's licenses for failure to pay child support violates a right to travel.

### X.   Plaintiffs fail to state a claim in Count V upon which relief can be granted for violation of the Due Process Clause concerning lack of procedural due process.

Procedural due process involves determination "whether the State's nonjudicial mechanisms used to determine the facts in a particular case are sufficient." *Morgan v. Rabun*, 128

F.3d 694, 698 (8th Cir. 1997) (*quoting Washington v. Harper*, 494 U.S. 210, 220 (1990)). Plaintiffs argue that the driver's license suspension statute is unconstitutional as applied to Plaintiffs and the purported class because "it does not guarantee an ability-to-pay hearing or provide notice of such a hearing." *See* Am. Compl., p. 40.

Plaintiffs are correct that driver's licenses cannot be suspended without the procedural due process required by the Fourteenth Amendment. *Bell v. Burson*, 402 U.S. 535, 539 (1971). However, the property interest in a driver's license is "not so great as to require us to depart from the ordinary principle … that something less than an evidentiary hearing is sufficient prior to adverse administrative action." *Dixon v. Love*, 431 U.S. 105, 113 (1977) (internal quotes omitted).[1]

In order to determine if there has been a violation of procedural due process, a court must evaluate (1) the private interest affected, (2) the risk of erroneous deprivation of that interest through the procedures used, and (3) the governmental interest at stake. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). Plaintiffs have a property interest in a valid driver's license, but such interest is subject to boundaries established by state law. *Roth*, 408 U.S. at 577. Therefore, the first prong weighs only slightly in favor of Plaintiffs. It is also indisputable that the State has a substantial interest in collection of child support payments. *Weiss v. Weiss*, 392 F.3d 306, 315 (8th Cir. 2004). Therefore, the third prong weighs heavily in favor of Defendants.

Further, Plaintiffs have not established the second prong: a risk of erroneous driver's license deprivation through the procedures used. There are procedural safeguards in place to insure

---

[1] *See also Tomai-Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228 (4th Cir. 1985):
> We do not disparage the importance of a driver's license … . We merely note that suspension is not an uncommon occurrence, that alternative arrangements are usually possible, and that the Court has expressly held that the interest is not so great as to require departure from the principle that an evidentiary hearing is not ordinarily required prior to adverse administrative action.

that there is no erroneous deprivation of a driver's license. Initially, when a child support obligor falls behind on his or her payments such that state law allows suspension of child support, FSD policy is that a child support specialist must review the case before notice of a pending suspension is sent. If the child support specialist concludes that suspension is appropriate, notice is sent to the obligor by certified mail. MO. REV. STAT. § 454.1003.3. If the certified mail receipt is not returned signed, the notice is sent by process server. MO. REV. STAT. § 454.1003.3. If the process server is not able to personally serve the notice, *the license is not suspended. Id.* The notice of intent to suspend notifies obligors that they may request a hearing if they think their license is being wrongfully suspended. MO. REV. STAT. § 454.1003. Plaintiffs focus exclusively on this hearing, at which the administrative hearing officer or court confirms (1) the identity of the obligor; (2) whether the arrearage is greater than or equal to three months of payments or $2,500.00 or less; and (3) whether the obligor has entered into a payment plan. MO. REV. STAT. § 454.1005.4. This hearing insures no erroneous deprivation. Procedural due process is not violated when an individual is given notice and an opportunity to be heard before suspension. *Burlison v. Rogers*, 311 Fed. Appx. 207, 208 (11th Cir. 2008).

Plaintiffs' argument, however, is that this hearing violates due process because it does not provide them with an additional venue to argue that they are unable to pay their child support. Plaintiffs' complaint is merely that Plaintiffs cannot present evidence of ability to pay at ***this specific hearing***. Plaintiffs argue without support that "[t]he pre-deprivation hearing must contemplate ability to pay." *See* Am. Compl. at ¶ 224. This argument ignores all other opportunities to raise ability to pay, and conflates the civil enforcement process with criminal due process concerns.

22

In fact, the named Plaintiffs admit that they presented their ability to pay and that their child support obligation was imposed only after at least one, sometimes more than one, hearing in front of a court wherein their ability to pay *was considered*. *See* Am. Compl. at ¶¶ 30, 50, 66, 68, 70, 98. While Plaintiffs have asserted that they are still unable to pay the amounts ordered by the family court, the fact that they are unhappy with the outcome does not negate the fact that they were able to argue and have considered their ability to pay.

Further, Plaintiffs' Amended Complaint ignores the multiple options available to Plaintiffs prior to license suspension to argue ability to pay and mischaracterizes the nature of due process required prior to driver's license suspension. These options include (1) an initial determination by either a court or FSD that the obligor is able to pay the amount of child support before an order for child support is entered, *see* MO. REV. STAT. § 452.340; (2) the opportunity to move the court for modification of the child support amount at any time, MO. REV. STAT. §§ 452.370, 454.496, 454.500; (3) the opportunity to return to the court to argue that a hardship has impeded their ability to pay their court order child support, MO. REV. STAT. § 454.1010.3; (4) the ability to enter into a payment plan with FSD at any time, including potentially one that requests a temporary reduction of payments on the underlying child support obligation to avoid license suspension; and (5) the administrative hearing officer or court after the notice of intent to suspend license is issued, MO. REV. STAT. § 454.1005.4. The Missouri statute at issue allows for driver's license suspension only after an obligor is determined to owe an amount for support of his or her child, a determination which already considered the obligor's ability to pay, and the obligor failed to pay child support. Plaintiffs do not argue and cannot establish that they were denied due process during these underlying proceedings.

To the extent that Plaintiffs have not used the process provided to them by statute to have their ability to pay considered in a child support award, Plaintiffs have not met their burden to demonstrate the inadequacy of state-law procedures. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 485 (1982) ("The fact that [plaintiff] failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy."). To the extent that Plaintiffs ignore state law procedure, which allows consideration of ability to pay, while arguing only that the pre-suspension hearing should consider ability to pay, Plaintiffs seek to sidestep state process by bringing this federal lawsuit. *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 71 (2009) (noting that a plaintiff cannot complain that state law procedures do not work when he has not tried them). Plaintiffs have previously successfully used state law procedures to argue their alleged inability to pay. Therefore, even if the pre-suspension hearing were to consider ability-to-pay yet again, it would merely provide Plaintiffs another bite of the apple to argue again their inability to pay and, therefore, would not make a "determinative difference" in the outcome. *Lassiter v. Dept. of Social Services of Durham County, N.C.*, 452 U.S. 18, 33 (1981).

The essence of procedural due process is prior notice and an opportunity to be heard. *Bd. Of Regents v. Roth*, 408 U.S. 564, 573 (1972). Missouri law provides prior notice and ample opportunity for Plaintiffs to present evidence of their ability to pay and, as demonstrated by Plaintiffs' Amended Complaint, every named Plaintiff has taken advantage of that opportunity. As such, Plaintiffs have failed to state a claim for a violation of their right to procedural due process, and the Court should dismiss such claims.

24

## CONCLUSION

For the reasons stated, Defendants request this Court dismiss Plaintiffs' Amended Complaint for the above-stated reasons, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**ERIC S. SCHMITT**
Attorney General for the State of Missouri

*/s/Laura Robb*
Laura M. Robb, #64117
Robert W. Phillips, #50470
Assistant Attorneys General
P.O. Box 861
St. Louis, MO 63188
Telephone: 314-340-7861
Facsimile: 314-340-7029
laura.robb@ago.mo.gov
robert.phillips@ago.mo.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically with the Clerk of the Court on November 8, 2019, to be served by operation of the Court's electronic filing system upon all parties.

*/s/ Laura M. Robb*
Laura M. Robb
Assistant Attorney General

25