UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NATHAN WRIGHT, et al.            )
                                 )
        Plaintiffs,              )
                                 )
                                 )
v.                               )    Case No.  4:19-CV-398-RWS
                                 )
                                 )
FAMILY SUPPORT DIVISION OF       )
MISSOURI DEPARTMENT OF           )
SOCIAL SERVICES, et al.          )
                                 )
        Defendants.              )

## MEMORANDUM AND ORDER

This case is before me on the Defendants' motion to dismiss Plaintiffs'

Amended Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ.

P. 12(b)(1) and for failing to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). In

their complaint, Plaintiffs challenge the constitutionality of Missouri's system for

suspending the driver's licenses of non-custodial parents who are unable to pay

court-ordered child support. For the reasons discussed below, I will grant

Defendants' motion as to Plaintiffs' equal protection and fundamental rights claims

but will deny the motion as to the procedural due process claim.

## BACKGROUND

Plaintiffs in this case are non-custodial parents who have had their driver's

licenses suspended by the Missouri Department of Social Services' Family Support Division ("FSD"). Am. Compl. at ¶ 15-18.  Defendants are the Family Support Division of the Missouri Department of Social Services, Michael Parson in his official capacity as Governor of Missouri, Jennifer Tidball in her official capacity as Acting Director of the Missouri Department of Social Services, Reginald McElhannon in his official capacity as Interim Director of the Family Support Division, Kenneth Zellers in his official capacity as Acting Director of the Missouri Department of Revenue, and Joseph Plaggenberg in his official capacity as Director of the Motor Vehicle and Driver Licensing Division of the Missouri Department of Revenue (collectively, "Defendants").

Plaintiffs filed this action on March 4, 2019 and filed an amended complaint on August 30, 2019. In the amended complaint Plaintiffs asserted the following claims: (1) violation of equal protection and fundamental fairness under Griffin v. Illinois and Bearden v. Georgia; (2) violation of equal protection under San Antonio School District v. Rodriguez; (3) violation of fundamental right to travel; (4) violation of equal protection under James v. Strange; and (5) violation of procedural due process.

After filing their amended complaint, Plaintiffs filed a motion for preliminary injunction and a motion to certify a class on November 1, 2019. Defendants then filed their motion to dismiss on November 4, 2019.  A hearing on

the motion for preliminary injunction and motion for class certification was held on December 12, 2019 before United States District Judge Ronnie L. White. The case was subsequently transferred to me. Since the motions for preliminary injunction and class certification will depend on the outcome of the motion to dismiss, I am ruling on it first.

## STATEMENT OF FACTS

Under Missouri law, the FSD has the authority to issue an order suspending the driver's licenses of parents who fail to pay child support. § 454.1003 RSMo. The statute provides that FSD may suspend the license of any person who is $2500 or three or more months in arrears, whichever is less. Id. The law does not provide an indigency exception. FSD suspended Plaintiffs' licenses under this statute. The suspensions caused hardships to Plaintiffs, making it difficult for them to maintain employment, see their children, and take care of the children in their custody. Am. Compl. at ¶¶ 15-18, 152.

Under the statute, 60 days before FSD suspends the license of a person in arrears, FSD is required to send notice to the person. § 454.1003 RSMo.  As outlined in the statute, the notice lists three options for preventing license suspension: pay off the arrearage, enter a payment plan approved by FSD or the court, or request a hearing before the court or the director. Am. Compl. at ¶ 128. The notice does not indicate that any of the options will take into account a

person's ability to pay. Am. Compl. at ¶ 27.

Despite the notice requirement, several plaintiffs do not recall receiving notice prior to their license suspension. Am. Compl. at ¶¶ 45, 72. Additionally, when FSD sends the notice, the recipient often receives the notice after the 60 day reply period has elapsed. Am. Compl., Ex. 9, at ¶ 4. Even when Plaintiffs received notice, they were unable to effectively contest the license suspension. Because of their indigency, Plaintiffs were unable to pay off their arrears. The payment plans offered by FSD often did not allow for Plaintiffs to reduce their payments below their current support order amounts, or they required payments that were still beyond Plaintiffs' financial means. Am. Compl. at ¶ 130.

The last option for preventing a license suspension is a hearing either before the FSD Director or a state court. Am. Compl. at ¶ 131.  The hearing process also does not allow for consideration of an individual's ability to pay. Am. Compl. at ¶ 131. The only issues that may be addressed in the hearing are whether the parent is the correct person; whether the arrearage is greater than or equal to $2500 or three months of support payments; and whether the parent has entered a payment plan. Am. Compl. at ¶¶ 131, 132. Because of these limitations, Plaintiffs were unable to effectively contest license suspension, even though their failure to pay was non-willful.

Plaintiffs also contend that once the state suspends a license, it is difficult to

4

stay the suspension or have the license reinstated.  Am. Compl. at ¶ 134-148. For Plaintiffs to have their licenses reinstated, FSD or a court must determine that the arrearage was paid in full. § 454.1013.1 RSMo. Additionally, FSD only offers stays if parents begin making timely payments in accordance with their current child support order and toward their arrears. FSD is statutorily prohibited from issuing stays based solely upon hardship; only a court may provide a stay for hardship. Am. Compl. at ¶ 136; § 454.1010.3 RSMo. According to Plaintiffs, in practice, the process for obtaining a stay or reinstatement is unclear and inconsistent. Am. Compl. at ¶¶ 139, 142.

For these reasons, Plaintiffs have been living without their driver's licenses. Because Plaintiffs' licenses are suspended, they have been unable to maintain steady work, pay child support, and in some cases, have been unable to regularly see their children. Am. Compl. at ¶¶ 59, 159-166. Additionally, many of the plaintiffs without alternatives elect to drive with a suspended license, risking criminal charges, in order to get to work or pick up their children from school. Am. Compl. at ¶¶ 152, 174-179.

## LEGAL STANDARD

Dismissal under Rule 12(b)(1) of the Federal Rules of Civil Procedure is appropriate if the party asserting jurisdiction has failed to satisfy a threshold jurisdictional requirement. See Herden v. United States, 726 F.3d 1042, 1046 (8th

Cir. 2013). "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case – there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990). Therefore, when ruling upon a motion to dismiss under Fed. R. Civ. P. 12(b)(1), a district court is free to review matters outside of the complaint such as affidavits and documents. Id. at 729–31. A Rule 12(b)(1) motion is distinct in that, unlike a Rule 12(b)(6) motion, when a factual challenge to jurisdiction is made by a movant there is no presumptive truthfulness attached to a plaintiff's allegations in the complaint. Id. at 730 (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3rd Cir.1977)).

When considering a Rule 12(b)(6) motion, I must assume the factual allegations of the complaint to be true and construe them in favor of the plaintiff. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989). I am not, however, bound to accept as true a legal conclusion couched as a factual allegation. Bell Atlantic Corporation v. Twombly, 555 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S.C. 662, 667 (2009) (quoting Twombly, 555 U.S. at 570).  Although "specific facts are not necessary," the plaintiff must

allege facts sufficient to "give fair notice of what the ... claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Twombly, 550 U.S. at 555).

A plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562(quoted case omitted). This standard "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556. The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id.

## DISCUSSION

### Abstention

Defendants moved to dismiss the complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. Defendants also seek dismissal of the complaint under the Younger Abstention doctrine. "Abstention is an exception to the general rule that 'federal courts ordinarily should entertain and resolve on the merits an action within the scope of a jurisdictional grant.'" Oglala Sioux Tribe v. Fleming, 904

F.3d 603, 610 (8th Cir. 2018) (quoting Sprint Communications, Inc. v. Jacobs, 571

U.S. 69, 72-73 (2013)). Neither abstention doctrine applies in this case, so

Defendants' motion to dismiss on these grounds will be denied.

### Rooker-Feldman Doctrine

Defendants first argue that I do not have subject matter jurisdiction over

Plaintiffs' claims under the Rooker-Feldman doctrine. Rooker v. Fidelity Trust

Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460

U.S. 462 (1983).  "The Rooker–Feldman doctrine precludes lower federal courts

from exercising jurisdiction over actions seeking review of, or relief from, state

court judgments." Hageman v. Barton, 817 F.3d 611, 614 (8th Cir. 2016). The

doctrine is limited in scope and does not bar jurisdiction over independent claims

arising from state court proceedings or general constitutional challenges that are

not inextricably intertwined with the claims asserted in state court. Hageman, 817

F.3d at 614; Charchenko v. City of Stillwater, 47 F.3d 981, 983 (8th Cir. 1995) ("A

claim is inextricably intertwined if the federal claim succeeds only to the extent

that the state court wrongly decided the issues before it.").  In other words, "the

boundaries for application of the doctrine depend upon the nature of the federal

claims and whether the plaintiff in federal court, in fact, seek relief from the state

court judgment." Hageman, 817 F.3d at 614.

Here, Plaintiffs are not attacking the underlying support order. Rather, they

are attacking the FSD license suspension scheme, which is a mechanism provided by Missouri law to enforce support orders. Although the underlying support order may be relevant to these claims, a decision in this case does not require review of or relief from the state order and does not "succeed only to the extent the state court wrongly decided the issues before it." Charchenko, 47 F.3d at 983. Therefore, these claims are not inextricably intertwined with the state court order, but rather are independent claims arising from the state court proceeding. Accordingly, Rooker-Feldman does not apply.

### *Younger Abstention Doctrine*

Defendants also argue the complaint should be dismissed pursuant to the Younger abstention doctrine. In Younger v. Harris, the United States Supreme Court held that federal courts should abstain from reviewing constitutional challenges to state statutes brought by parties subject to pending state criminal proceedings under them. 401 U.S. 37, 54 (1971). Although Younger considered abstention in the context of a criminal proceeding, the Supreme Court has extended the doctrine to certain state civil proceedings that are akin to criminal prosecution or that implicate a State's interest in enforcing orders of its courts. Sprint Communications, Inc. v. Jacobs, 571 U.S. 69, 72-73 (2013). Specifically, abstention is warranted when "(1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to

raise any relevant federal questions in the state proceeding." Geier v. Missouri Ethics Com'n, 715 F.3d. 674, 678 (8th Cir. 2013).

In this case, Younger abstention is not warranted. First, there is no ongoing state proceeding. Although Defendants argue that Plaintiffs are all subject to an ongoing child support order issued and monitored by the Circuit Court of St. Louis County, Missouri, these do not constitute ongoing proceedings. As the Supreme Court has noted, "the doctrine 'reflects a strong policy against federal intervention in state judicial processes in the absence of great and immediate irreparable injury to the federal plaintiffs.'" Oglala Sioux Tribe v. Fleming, 904 F.3d 603, 610 (8th Cir. 2018) (quoting Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). The claims in this case do not implicate state judicial processes. Unlike the plaintiffs in Oglala Sioux Tribe v. Fleming, who sought an array of reforms to South Dakota's temporary custody proceeding, Plaintiffs here are challenging an administrative enforcement mechanism and only seek reform of a single aspect of the license suspension scheme. Finally, the administrative enforcement action is not ongoing. Plaintiffs' licenses have been suspended and no further hearings related to those decisions are pending.  Therefore, the first Younger factor weighs against abstention.

Similarly, the third Younger factor weighs against abstention. Defendants argue that Plaintiffs had, and continue to have, the opportunity to raise any

10

constitutional claims in front of the state circuit court, because they can always seek state court review of their child support obligation. This review includes consideration of an argument that hardship has impeded their ability to pay or that their driver's license suspensions should be stayed.

Defendants misinterpret Plaintiffs' constitutional claims. Plaintiffs are not challenging their support orders; they are challenging the administrative agency's ability to suspend licenses without considering Plaintiffs' ability to pay. Defendants cite to Ronwin v. Dunham for the proposition that Younger is fully applicable to state administrative proceedings regarding the suspension of driver's licenses, but Ronwin is distinguishable from this case. Ronwin v. Dunham, 818 F.2d 675 (8th Cir. 1987). First, the license suspension at issue in Ronwin was related to traffic violations and implicated the safety of state roadways. Second, in Ronwin, the driver's license suspension was automatically stayed pending an administrative hearing. Here, there are no hearings pending and thus no guaranteed opportunity for Plaintiffs to raise their claims.

The second Younger factor weighs in favor of abstention, because the State has a strong interest in ordering and enforcing child support obligations, Clark v. Jeter, 486 U.S. 456, 462 (1988).  However, that factor alone is insufficient to warrant abstention. As a result, Defendants' motion to dismiss under the Younger abstention doctrine is denied.

## Dismissal Pursuant to 12(b)(6)

Defendants also seek dismissal of each of the individual claims pursuant to Fed. R. Civ. P. 12(b)(6). Although documents have been filed in support of Plaintiffs' motion for preliminary injunction and class certification, my consideration of the 12(b)(6) motion will be limited to the pleadings and exhibits that are integral, authentic, and matters of public record.

### *Violation of Equal Protection and Fundamental Fairness under Griffin v. Illinois and Bearden v. Georgia and Violations*

Plaintiffs' first two claims challenge Defendants' license suspension scheme under the Equal Protection Clause of the Fourteenth Amendment. U.S. Const. amend XIV, § 1.  Although Plaintiffs bring two separate claims, one under Griffin v. Illinois, 351 U.S. 12, 13 (1956), and one under San Antonio Indep. School District v. Rodriguez, 411 U.S. 1 (1973), the claims are substantially similar, and I will consider them together.

Plaintiffs argue that they are entitled to a heightened standard of review because they satisfy the San Antonio Indep. School District v. Rodriguez test to determine when wealth should be treated a suspect classification.  See Rodriguez, 411 U.S. 1, 20 (1973). In Rodriguez, the Court explained that "[t]he individuals, or groups of individuals, who constituted the class discriminated against in our prior cases shared two distinguishing characteristics: because of their impecunity they were completely unable to pay for some desired benefit, and as a consequence,

12

they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit." Id.  In explaining the two-pronged test, the Rodriguez Court specifically relied on Griffin and its progeny, noting that its precedents provided a proper starting point for analysis of wealth as a suspect classification.  Id.; see also ODonnell v. Harris Cty., 892 F.3d 147 (5th Cir. 2018).

The test in Rodriguez establishes the threshold requirements for determining whether a class of indigent individuals is subject to heightened scrutiny. See Rodriguez, 411 U.S. at 18-20.  If these requirements are met, then the Court must determine whether the class falls within the confines of the Griffin line of cases. See Sharon Motley, Plaintiff, v. Hal Taylor, in his official capacity as Sec'y of the Alabama Law Enf't Agency, Defendant., No. 2:19-CV-478-WKW, 2020 WL 1540391 (M.D. Ala. Mar. 31, 2020); ODonnell v. Harris Cty., 892 F.3d 147 (5th Cir. 2018). If they are not, then rational basis review is appropriate. Rodriguez, 411 at 28-29.  Here, Plaintiffs have alleged facts sufficient to establish that their claim satisfies the Rodriguez test. Am. Compl. at ¶¶ 49, 65, 74-75,89-90, 112-126 129-130. Accordingly, I now turn to whether the claims fall within the scope of the Griffin line of cases.

Plaintiffs argue that the suspension scheme at issue here falls within the scope of Griffin because it is quasi-criminal in nature and is a logical extension of the current caselaw. Plaintiffs contend that the fundamental message from the

13

Griffin line of cases is that a state cannot punish an individual for non-willful non-payment and that a scheme that punishes an individual on that ground is subject to heightened review. Defendants argue that Griffin applies to a narrow subset of cases involving liberty interests or access to the courts in criminal and quasi-criminal judicial proceedings. Defendants contend that Plaintiffs' claims do not fall within either of these categories and are only entitled to rational basis review.

In Griffin, the Supreme Court invalidated a law requiring all criminal defendants to purchase transcripts of their trials in order to appeal.  Griffin v. Illinois, 351 U.S. 12, 13 (1956). Although the law was facially neutral, the Court determined that it violated the Equal Protection and Due Process Clauses of the Constitution because in practice it denied indigent defendants the same right to appeal as other defendants.

In the years following Griffin, the Supreme Court extended its protections for indigent litigants to other areas, creating a number of exceptions to the general rule that wealth is not a suspect classification. First, the Court extended Griffin's protection of access to appeals to non-felony cases, see Mayer v. Chicago, 404 U.S. 189 (1971). The Court then extended Griffin to protect indigent criminal defendants from policies that punish them for their inability to pay fines, restitution, and court expenses. See Williams v. Illinois, 399 U.S. 235 (1970); Tate v. Short, 401 U.S. 395 (1971); Bearden v. Georgia, 461 U.S. at 661 (1983).

The Supreme Court also extended <u>Griffin</u> to cover two areas outside of the criminal context. First, the Court extended <u>Griffin</u> protections to policies that restrict access to courts in civil cases involving "state controls or intrusion on family relationships." <u>M.L.B v. S.L.J.</u>, 519 U.S. 102 (1996) (holding that a statute requiring a mother to pay record preparation fees in order to appeal termination of her parental rights violated Equal Protection); <u>see also</u> <u>Boddie v. Connecticut</u>, 401 U.S. 371 (1971) (holding that a State could not deny a divorce to a married couple based on their inability to pay court costs); <u>Little v. Streater</u>, 452 U.S. 1 (1981) (holding that a state must pay for blood grouping tests sought by an indigent defendant to enable him to contest a paternity suit); <u>c.f.</u> <u>United States v. Kras</u>, 409 U.S. 434 (1973) (holding the requirement to pay filing fees to obtain discharge in bankruptcy is not subject to heightened review); <u>Ortwein v. Schwab</u>, 410 U.S. 656 (1973) (holding that an appellate filing fee, as applied to indigents seeking to appeal an adverse welfare decision, was not subject to heightened review)., The Court has also extended <u>Griffin</u> to policies that restrict access to the political process. <u>Bullock v. Carter</u>, 405 U.S. 134 (1972) (holding that a Texas primary election filing fee system, under which cost of primary elections is borne by candidates, with no alternative means of obtaining a position on primary ballots contravenes equal protection).

Plaintiffs' case does not fall into any of the four exceptions to the general rule that wealth is not a suspect classification.  The state is not controlling or intruding on Plaintiffs' family relationships or their access to the political process. Although a driver's license may be critical for an individual to maintain their livelihood, a claim arising from a driver's license suspension does not fit within the scope of the Griffin exception and does not warrant heightened scrutiny. See Mendoza v. Garrett, 358 F.Supp.3d 1145, 1171 (D. Or. 2018) (citing Fowler v. Benson, 2017 WL 6379676 at *7 (E.D. MI. Dec. 14, 2017) (overturned on other grounds)) (holding plaintiffs' claim that suspension of their driver's license for inability to pay traffic fines violated the Equal Protection Clause under Griffin was not likely to succeed on the merits because it was rationally related to a legitimate state interest); but see. Robinson v. Purkey, 326 F.R.D. 105 (M.D. Tenn. 2018) (holding that the plaintiff was likely to succeed on the merits of their claim that suspension of a driver's licenses for inability to pay violated Equal Protection under Griffin). As a result, I will apply rational basis review to Plaintiffs' claims.

Under rational basis review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440. This is true "even if the law seems unwise or works to the disadvantages of a particular group, or if the rationale for it seems tenuous." Romer v. Evans, 517 U.S. 620, 632 (1996).

"The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." <u>City of Cleburne, Tex v. Cleburne Living Center</u>, 473 U.S. 432, 446 (1985). Additionally, classifications based on an irrational prejudice or animosity do not survive rational basis review. <u>Id</u>. at 450; <u>Romer</u>, 517 U.S. at 634. In areas of social and economic policy, a statutory classification "that neither proceeds along suspect lines nor infringes fundamental constitutional rights" will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." <u>F.C.C. v. Beach Commc'ns., Inc.</u>, 508 U.S. 307, 313 (1993).

Here, Plaintiffs do not argue that the classification created by the license suspension scheme is "based on an irrational prejudice or animosity." <u>City of Cleburne</u>, 473 U.S. at 450. So, the statute will withstand rational basis review if there is any "reasonably conceivable state of facts that could provide a rational basis for the classification." <u>Id</u>.

As Defendants have explained, Missouri has a legitimate interest in collecting child support from parents on behalf of their children and suspension of an individual's driver's license aids that purpose by encouraging payment. Defs.' Mem. in Supp. of Their Mot. to Dismiss at 14 (citing <u>Weiss v. Weiss</u>, 392 F.3d 306, 315 (8th Cir 2004).  Plaintiffs argue suspending the license of someone with the inability to pay will make it more difficult for them to pay child support in the

future.  However, social and economic legislation like the statute at issue "carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." Hodel v. Indiana, 452 U.S. 314, 331–332 (1981). Here, a plausible basis exists for the statute, so "the Court's scrutiny must end." Knapp v. Hanson, 183 F.3d 786, 789 (8th Cir. 1999). The statute in this case withstands the equal protection challenge because Defendants have identified a rational reason for the statute. Id.

 Plaintiffs do not allege facts sufficient to claim the statute will be invalidated on rational basis review, so Counts 1 and 2 of the complaint will be dismissed.

### Violation of the Fundamental Right to Travel

Plaintiffs argue that the FSD license suspension scheme violates their fundamental right to travel. Although a specific right to travel is never mentioned in the Constitution, "the 'constitutional right to travel from one State to another' is firmly embedded" in Supreme Court jurisprudence.  Saenz v. Roe, 526 U.S. 489, 498 (1999).  The right to travel has three components: (1) "the right of a citizen of one State to enter and to leave another State," (2) "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State," and (3) the right "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State." Id.  Although

several circuits have extended the right to travel to intrastate travel, the Eighth

Circuit has not definitely decided whether intrastate travel is part of the

fundamental right to travel.  Doe v. Miller, 405 F.3d. 700, 713 (8th Cir. 2005)

(declining to decide whether there is a fundamental right to intrastate travel).

      But, even assuming a right to intrastate travel, Plaintiffs fail to state a claim.

Although the inability to legally drive is an extreme hardship on Plaintiffs, courts

have consistently held that "burdens on a single mode of transportation do not

implicate the right to interstate travel." See Miller v. Reed, 176 F.3d 1202, 1205-

1206 (9th Cir. 1999); see also Matthew v. Honish, 233 Fed. Appx 563 (7th Cir.

2007); Owner Operator Indep. Drivers Ass'n, Inc. v. Pennsylvania Tpk. Comm'n,

934 F.3d 283 (3d Cir. 2019), cert. denied, 140 S. Ct. 959 (2020); Henderson v.

Haberberger, 2013 WL 4678087, No. 4:13-cv-1699-RWS (Aug. 30, 2013). In

Dixon v. Love, the Supreme Court held that state could summarily suspend or

revoke an individual's driver's license without a full administrative hearing, not

affording the possession of a driver's license the weight of a fundamental right.

See Miller v. Reed, 176 F.3d 1202, 1205-1206 (9th Cir. 1999) (citing Dixon v.

Love, 431 U.S. 105, 112–16 (1977) (holding that a post depravation hearing is

sufficient when the state's interest in the safety of its highways is substantial and

risk of erroneous is low because the suspension is based on the number of traffic

violations accrued)). Therefore, suspension of a license, although burdensome,

does not violate the fundamental right to travel.  Plaintiffs fail to state a claim for violation of their right to travel, and I will dismiss Count 3 of the complaint.

### *Violation of Equal Protection under James v. Strange*

Plaintiffs' fourth claim alleges that Defendants' driver's license suspension scheme constitutes extraordinary collection under James v. Strange, 407 U.S. 128, 134-35 (1972).  In James v. Strange, the Supreme Court struck down a Kansas recoupment statute that allowed the State to recover legal defense expenditures from indigent criminal defendants in subsequent civil proceedings. Id. The statute stripped from indigent defendants a number of protections available to civil judgement debtors, including restrictions specifically designed to protect indigent debtors. Id. at 134-35.  The Court held that denying indigent defendants the same protections provided to other civil judgment debtors violated the Equal Protection Clause.

Plaintiffs contend that James v. Strange applies in this case because Defendants are unlawfully enforcing a debt collection method not afforded to private creditor. But this misapplies Strange. In Strange, "[t]he Court found that the elimination of the exemptions normally available to judgment debtors 'embodie(d) elements of punitiveness and discrimination which violate the rights of citizens to equal treatment under the law.'" Fuller v. Oregon, 417 U.S. 40, 47 (1974). Here, Plaintiffs are not looking at a single group of similarly situated debtors, but rather

comparing Plaintiffs to all private debtors. This ignores the Court's explicit recognition in <u>Strange</u> "that the State's claim to reimbursement may take precedence, under appropriate circumstances over the claims of private creditors and that enforcement procedures with respect to judgments need not be identical." <u>Strange</u>, 407 U.S. at 138. Accordingly, there does not need to be exact parity between the State and private creditors. <u>See</u> <u>Fowler v. Benson,</u> 924 F.3d 247, 263 (6th Cir. 2019).

Since Plaintiffs fail to show discrimination between similarly situated creditors, <u>James v. Strange</u> is inapposite.  Accordingly, the Plaintiff's fail to state a claim under <u>James v. Strange</u>, and I will dismiss Count 4 of the complaint.

### *Violation of Procedural Due Process*

Finally, Plaintiffs claim Defendants' license suspension scheme violates the Due Process Clause of the Fourteenth Amendment. In particular, Plaintiffs argue Defendants failed to provide adequate notice or an opportunity to be heard on the issue of ability to pay prior to their license suspensions. Defendants argue Plaintiffs had notice and an opportunity to be heard prior to the suspension of their licenses, because there are numerous mechanisms by which individuals may modify their support order or otherwise request the state stay the license suspension due to hardship.

The Due Process Clause protects individuals from a state's impermissible

deprivation of a protected property interest. Mathews v. Eldridge, 424 U.S. 319 (1976). Procedural due process claims consist of two elements: (1) the existence of a liberty or property interest entitled to due process protection, and (2) deprivation of that interest without sufficient notice and opportunity to present objections. Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950) (citing Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "Property interests are ... created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Once a plaintiff establishes a property interest, "the question remains what process is due." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).

Plaintiffs have a protected property interest in their continued possession of a driver's license. See Bell v. Burson, 402 U.S. 535, 539 (1971) ("Once [driver's] licenses are issued, ... their continued possession may become essential in the pursuit of a livelihood ... [and they] are not to be taken away without that procedural due process required by the Fourteenth Amendment.") (citation omitted); Dixon v. Love, 431 U.S. 105, 112 (1977); Mackey v. Montrym, 443 U.S. 1, 10 (1979).  The question, therefore, is whether Plaintiffs have plausibly alleged that the process provided was insufficient. See Morrissey, 408 U.S. at 481.

The "fundamental requirement of due process is the opportunity to be heard

22

at a meaningful time and in a meaningful manner." <u>Mathews v. Eldridge</u>, 424 U.S. at 333. "Generally, where deprivations of property are authorized by an established state procedure, due process is held to require pre-deprivation notice and hearing in order to serve as a check on the possibility that a wrongful deprivation would occur." <u>Id.</u> (internal quotation marks and citation omitted). "Due process is a flexible concept, however, and calls only for such procedural protection as the particular situation demands." <u>Matthews</u>, 424 U.S. 334; <u>Moore v. Warwick Pub. School Dist. No. 29</u>, 794 F.2d 322, 327 (8th Cir.1986).

In order to determine what procedural protection a particular situation demands, <u>Matthews</u> outlines three factors for me to consider: (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." <u>Id</u>. at 335.

In this case, the first and third factors are straightforward. First, Plaintiffs have a significant private interest in maintaining their driver's licenses. Suspension of an individual's driver's license makes it difficult to maintain employment, pick children up from school, and see non-custodial children. Am. Compl. at ¶ 2 & 3.

23

Additionally, in rural areas of Missouri, driving may be the only means of getting to work, making it a critical component of maintaining a livelihood. The Supreme Court has "frequently recognized the severity of depriving a person of the means of livelihood." Loudermill, 470 U.S. 532, 543 (1985); see also Bell, 402 U.S. at 539 (recognizing that a driver's license may become "essential in the pursuit of a livelihood."); Fowler, 924 F.3d at 269 (Donald, J., dissenting).

Conversely, the government's interests in suspending driver's licenses without a pre-deprivation hearing are minimal. Defendants advance no argument that permitting Plaintiffs to challenge their ability to pay fines before having their licenses suspended would cause undue fiscal or administrative burdens. Additionally, unlike other cases in which a state has suspended a driver's license prior to a hearing in order to protect the safety of drivers on the State's roadways, there are no safety concerns here. Dixon v. Love, 431 U.S. 105, 112 (1977). Lastly, because Defendants already provide a pre-depravation hearing on the identity of the parent in arrears and the total amount of arreage, the burden of considering ability to pay during the hearing is minimal.

Whether the procedure provided to Plaintiffs was sufficient, therefore, largely turns on the last Matthews factor: the risk of erroneous deprivation. First, Plaintiffs contend that the procedure provided by Defendants risks erroneous deprivation because it does not provide them an opportunity to be heard on the

ability to pay prior to deprivation. Defendants argue that ability to pay need not be considered prior to suspension, because it is considered when determining the initial support amount and when individuals petition to have their support orders reviewed and modified.

At this stage of the litigation, Plaintiffs are not required to prove their claim. They need only allege facts sufficient to state a claim that is plausible on its face. Iqbal, 556 U.S.C. at 667 (quoting Twombly, 555 U.S. at 570). Plaintiffs meet that burden. In considering the private interest involved here, the Supreme Court has held "that when a State seeks to terminate an interest such as [a driver's license], it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective." Bell v. Burson, 402 U.S. 535, 542 (1971). "[I]n reviewing state action in this area [the Court] look[s] to substance, not bare form to determine whether constitutional minimums have been honored." Id. at 541. Plaintiffs have plausibly alleged sufficient facts that ability to pay plays a crucial role in awarding and enforcing child support and is therefore "appropriate to the nature of the case." See Id.; Fowler, 924 F.3d at 269-70 (Donald, J., dissenting). First, Plaintiffs point to other mechanisms for enforcing child support that require consideration of ability to pay. Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at 7 (citing Turner v. Rogers, 564 U.S. 431, 448 (2011) (holding that a parent cannot be incarcerated for civil contempt for failure to pay child support,

absent an express finding on inability to pay).  Second, Plaintiffs note that ability to pay is embedded in the statutory scheme because it is considered when support is initially awarded and when individuals seek modification or review of their support orders. Am. Compl. at ¶¶ 112-25.

Defendants do not argue that ability to pay is irrelevant, but rather that Plaintiffs have had multiple opportunities to present arguments on ability to pay. First ability to pay is addressed at the initial determination of support. Second, Plaintiffs have the opportunity to move the court for modification of their support agreement. Third, Plaintiffs can petition the court to stay a license suspension due to hardship. Fourth, Plaintiffs can enter a payment plan with FSD at any time. Finally, the license suspension statute provides for a hearing.  Defs.' Mem. in Supp. of Their Mot. to Dismiss Pls.' Am. Compl. at 23.

The first two instances present the same issues: (1) they occur at a time before the licensee is in default, a time when the licensee may, in good faith, believe he has the ability to pay; and (2) they address the assessment of child support in the underlying support order, not the specific amount related to license suspension. See Stinnie v. Holcomb, 355 F. Supp. 3d 514, 530 (W.D. Va. 2018). The third instance comes after the suspension and thus does not provide pre-deprivation review. See also Keating v. Nebraska Public Power District, 562 F.3d 923, 928 (8th Cir. 2009) (recognizing "two notable exceptions" to this rule: (1)

26

"where there is a need for quick action by the State when there is a compelling or overriding interest in a summary adjudication;" and (2) "where the deprivation results from a random and unauthorized act by a state actor"). Additionally, Plaintiffs allege that the process for obtaining a stay is difficult to navigate and does not in practice consider ability to pay. Am. Comp. at ¶¶ 136-37. Plaintiffs also allege facts indicating that the payment plans provided by FSD do not adequately consider ability to pay and thus do not provide the necessary process. Am. Compl. at ¶¶ 102,130. Finally, the hearing provided prior to suspension does not allow Plaintiffs to argue inability to pay. Am. Comp. at ¶ 226. Because none of the available procedures allow Plaintiffs to be heard on their failure to pay child support and later license suspension, the procedures may not provide a meaningful opportunity to contest the license suspension. See Stinni, 355 F. Supp. 3d at 530-31. Therefore, these facts are sufficient to plausibly allege the current process could result in erroneous deprivation. See Loudermill, 470 U.S. at 543-44 (holding the plaintiffs stated a claim under the Due Process clause).

Because Plaintiffs have plausibly alleged the Defendants violated their right to due process, Defendants' motion to dismiss the Procedural Due Process Claim in Count 5 of the complaint will be denied.

**Claims Against Defendant Governor Parsons**

Plaintiffs conceded to dismissal without prejudice of Governor Parsons in

his official capacity. Pls.' Mem. in Opp'n to Defs.' Mot. to Dismiss at n. 2. As Defendants note, the Governor's broad duty to enforce state law is not sufficient to make him a party-defendant. <u>Church v. Missouri</u>, 913 F.3d 736, 749 (8th Cir. 2019). Accordingly, all claims against Governor Parsons are dismissed.

## CONCLUSION

Plaintiffs failed to state claims for violations of the Equal Protection Clause and the fundamental right to travel. However, Plaintiffs pleaded facts sufficient to state a claim under the Due Process Clause of the Fourteenth Amendment. Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) [49] is **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss [49] is **GRANTED** as to Counts 1-4 and **DENIED** as to Count 5.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss Governor Parsons in his official capacity is **GRANTED.**

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 1st day of May 2020.