UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NATHAN WRIGHT, et al.        )
                                )
       Plaintiffs,         )
                                )
                                )
v.                        )      No.  4:19 CV 398 RWS
                                )
                                )
FAMILY SUPPORT DIVISION OF   )
MISSOURI DEPARTMENT OF     )
SOCIAL SERVICES, et al.       )
                                )
       Defendants.        )

## MEMORANDUM AND ORDER

This case arises out of the Missouri Department of Social Services, Family Support Division's ("FSD") suspension of driver's licenses of parents who fail to pay child support.  The matter is now before me on Plaintiffs' motion for a preliminary injunction.  Because Plaintiffs have not alleged a concrete injury, they do not have standing to sue.  As a result, the motion will be denied and the case will be dismissed for lack of subject-matter jurisdiction.

## BACKGROUND

The three named Plaintiffs in this action are Camese Bedford, Ashley Gildehaus, and Lisa Mancini.  All three are Missouri parents whose driver's licenses

were suspended by Defendants prior to 2020 after failing to make child support payments due to inability to pay.

On March 4, 2019, Plaintiffs filed this action on behalf of themselves and all others similarly situated, alleging that that FSD violated their procedural due process rights by suspending driver's licenses of parents who failed to pay child support without any meaningful pre-suspension notice or opportunity to be heard on the ability to pay.

Prior to March 2020, FSD ordered driver's license suspension for non-custodial parents who failed to pay child support payments in the amount of $2,500 or were otherwise three months in arrears.  These suspensions occurred without a hearing to determine whether nonpayment was due to an inability to pay.  FSD paused new suspensions and has not issued any new suspension notices since March 2020.  In August 2023, the Missouri State Legislature passed Senate Bill 35, which requires FSD to provide formal notice of intent to suspend a driver's license and provide an opportunity for a formal pre-suspension hearing to satisfy due process.

In August 2023, FSD communicated to Plaintiffs that FSD would need at least six months to implement the legislation.  More than one year later, the legislation still has not been implemented and thousands of Missourians remain without licenses.

FSD has stayed the license suspensions of some suspendees who called to request a stay. However, the availability of a stay is not publicized at Missouri Department of Motor Vehicle locations. FSD does provide information on its website about entering payment agreements or seeking a judicial finding of hardship to obtain a stay. *See Frequently Asked Questions: Driver License Suspension*, MISSOURI DEPARTMENT OF SOCIAL SERVICES, https://dss.mo.gov/child-support/pdf/drivers-license-suspension.pdf (last visited Jan. 13, 2025).

FSD's procedural manual contains instructions about temporary payment agreements for those who are unable to pay child support. The manual notes that "as a general rule, the amount should be equal to or more than 50 percent of the current support obligation." ECF No. 195-4 at 12. But "[d]epending on the obligor's circumstances," the obligor may pay nothing "if [FSD] determines the obligor cannot pay any current support." *Id.* However, FSD does not have formal criteria for determining how much an obligor is able to pay under a payment agreement. *See* ECF No. 83-14 at 6; ECF No. 83-13 at 4; ECF No. 83-14 at 4.

Plaintiffs request the following relief to ensure that all putative class members are aware of what FSD is already offering informally and that is required by Senate Bill 35:

A. FSD shall allow stays when an obligor calls to request a stay if any one of four criteria are met: (a) FSD agrees that any past non-payment was non-willful due to indigence, (b) the obligor and FSD agree to a payment-plan, (c) the

obligor is employed and enters into automatic paycheck-withholding, or (d) the obligor requests a hearing with a Child Support Hearing Officer.

1. If the obligor requests a hearing, a Child Support Hearing Officer shall schedule a hearing at a mutually agreeable time within 60 days of the request. During the time between the obligor's request for a hearing and the hearing itself, the obligor's suspension is stayed, pending the result of the hearing.

2. The Hearing Officer shall allow testimony and documentary evidence from the obligor showing that non-payment was non-willful, and the Hearing Officer can consider testimony and documentary evidence from FSD showing that non-payment was willful. The Hearing Officer shall not consider testimony or evidence from FSD if it has not been provided to the obligor three business days prior to the hearing.

3. At least three business days prior to the hearing, FSD shall provide the obligor with all documentary evidence on which it intends to rely, a list of witnesses it intends to call, and a written summary of the relevant testimony each witness is expected to offer.

4. The burden of proof is on FSD to show that non-payment was willful by preponderance of the evidence. If FSD presents no evidence that non-payment was willful, the Hearing Officer shall find in favor of the obligor and remove the suspension.

5. After a hearing, the obligor's suspension shall remain stayed until a ruling is given by the hearing officer.

6. FSD's public notices shall capture the substance of these procedures, including the four instances under which FSD will grant a stay.

B. FSD shall create uniform and written procedures for issuing suspension stays and circulate internally among FSD and any other relevant divisions within the Department of Social Services so that all employees are familiar with the process and so that suspendees contacting FSD to request stays each receive the same instructions and have access to the same processes, regardless of

4

which employee they happen to talk to or what time they happen to contact FSD. FSD should share its internal written procedures for issuing stays with Plaintiffs' counsel so that all Parties are apprised of the formal process for issuing stays, but FSD need not publicize these procedures so long as FSD complies with the other public notice requirements encompassed herein.

C. Defendants (including FSD, DSS, DOR, and DMV officials) shall provide public notice informing suspendees of the option to request driver's license suspension stays and the criteria described above. Public notice includes:

1. Posting an 8.5-inch x 11-inch flyer in a readily-visible location at all DMV branches throughout the state advising suspendees of the option to call in and request a driver's license suspension stay if the suspension is based on unpaid child support arrearage. FSD should draft language for this flyer that (a) informs suspendees of the option to call in to request a stay, (b) the correct and updated contact information (telephone number and e-mail address) that suspendees should use to request a stay, (c) a complete list of information that suspendees should have prepared when they make their requests, and (d) the amount of time it is expected to take to obtain a valid stay once they make contact with FSD. FSD should share its draft language for the flyer with Plaintiffs' counsel for approval within 21 days of this Court issuing relief. If Plaintiffs' counsel determines that FSD's language complies with the order of this Court, there will be no further need to have the language approved by this Court prior to posting flyers at DMV locations throughout the state.

2. Issuing a press release announcing the option for stays for those whose driver's license is suspended based on unpaid child support arrearage. The press release should be published on FSD's main website and should (a) inform suspendees of the option to call in to request a stay, (b) include the correct and updated contact information (telephone number and e-mail address) that suspendees should use to request a stay, (c) include a complete list of information that suspendees should have prepared when they make their requests, and (d) specify the amount of time it is expected to take to obtain a valid stay once they make contact with FSD. FSD should share its draft language for the press release with Plaintiffs' counsel for approval within 21 days of this Court issuing relief. If Plaintiffs' counsel

determines that FSD's language complies with the order of this Court, there will be no further need to have the language approved by this Court prior to publishing the press release.

3. Posting prominent notice on relevant governmental websites, including: The Missouri Department of Social Services website (https://mydss.mo.gov), The "Child Support" landing page (https://dss.mo.gov/child-support/), The "Child Support Customer Portal" (https://my.mo.gov/child_support), The "License Reinstatement Requiring" landing page on the Missouri Department of Revenue website (https://dor.mo.gov/driverlicense/revocation-reinstatement/reinstatement-requirements.html), and The "Driver License Services" landing page on the My DMV website (https://mydmv.mo.gov/DL/Index). The notice on these websites should include the same information used in the DMV flyers.

## LEGAL STANDARD

"A district court considering injunctive relief evaluates the movant's likelihood of success on the merits, the threat of irreparable harm to the movant, the balance of the equities between the parties, and whether an injunction is in the public interest." *Turtle Islands Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021) (citation omitted). "The party seeking injunctive relief bears the burden of proving these factors." *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (citation omitted). "No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue." *Id.* (citation omitted). However, the movant's likelihood of success on the merits is the most significant

factor. *Sleep No. Corp. v. Young*, 33 F.4th 1012, 1016 (8th Cir. 2022) (citation omitted).

## DISCUSSION

Plaintiffs' motion asks for a preliminary injunction requiring FSD to enact uniform procedures regarding stays of driver's license suspensions. However, at the time of this order, Plaintiff Mancini's license suspension has been terminated and Plaintiffs Gildehaus and Beford have active stays on their license suspensions. As a result, these Plaintiffs cannot demonstrate an injury and lack standing to seek the injunctive relief requested.

### A.    Standing

"Under Article III of the United States Constitution, federal courts may hear only actual cases or controversies." *Hillesheim v. Holiday Stationstores, Inc.*, 903 F.3d 786, 790 (8th Cir. 2018). For a case or controversy to exist, a plaintiff must have standing to sue. *See Spokeo v. Robins*, 578 U.S. 330, 338 (8th Cir. 2016). The "[f]irst and foremost" element of standing is injury in fact. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998). To establish injury in fact, a plaintiff must show a concrete injury that "actually exist[s]." *Spokeo*, 578 U.S. at 339–340.

No injury exists here on behalf of the named Plaintiffs because Plaintiff Mancini's suspension has been terminated and because Plaintiffs Bedford and Gildehaus's suspensions are stayed. As a result, the injunction proposed by

7

Plaintiffs would not benefit Plaintiffs.  Plaintiffs are already aware that suspension stays are available and do not need notice of the option to request one.  Nor do they require FSD to establish a uniform process for issuing stays.

Plaintiffs argue that Bedford and Gildehaus remain injured because their suspensions are "stopped, but not terminated."  *See* ECF No. 195-4 at 1.  In support of this contention, Plaintiffs state that their suspension stays have been lifted and subsequently reimposed several times after failing to pay child support.  However, reimposition of these suspension stays occurred before April 2020, when FSD stopped issuing new suspensions.  Plaintiffs have not provided any evidence showing that FSD has terminated suspension stays since April 2020.  In the absence of such evidence, it is not clear that FSD's allegedly wrongful behavior could be reasonably expected to recur.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted) (explaining that an injury in fact must be "actual or imminent, not 'conjectural' or 'hypothethical'").  As a result, Plaintiffs do not have a concrete injury and lack standing to seek a preliminary injunction.

Without an injured plaintiff, I may not issue a preliminary injunction on behalf of a putative class.  *See Kandlbinder v. Reagen*, 713 F. Supp. 337, 339 (W.D. Mo. 1989) (citing *Zepeda v. United States I.N.S.*, 753 F.2d 719, 727–28 (9th Cir. 1983)) ("The court may not attempt to determine the rights of persons not before the court."); *see also Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("If the

named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek relief on his behalf or on that of the class."). Because the proposed injunction would not benefit Plaintiffs and a class has not been certified in this case, Plaintiffs do not have standing to request an injunction that affects all individuals with driver's license suspensions.

### B.    Dismissal

As a result of my finding that Plaintiffs have failed to allege an injury in fact and lack standing, I lack subject-matter jurisdiction and must dismiss the case without prejudice.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction will be denied and the case will be dismissed without prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion for a preliminary injunction [152] is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice for lack of subject-matter jurisdiction.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 29th day of January 2025.

9